**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| XEE RADER, Individually and on Behalf of Others Similarly Situated, | Case No.: _____ |
| v. | Jury Trial Demanded |
| GEN 1 PROTECTION | |

**ORIGINAL COMPLAINT**

**SUMMARY**

1.      Gen 1 Protection does not pay its Security Guards overtime as required by the Fair Labor Standards Act (FLSA), Colorado Wage Claim Act (CWCA), and Colorado Minimum Wage Act (CMWA).

2.      Instead, Gen 1 pays all its Security Guards the same hourly rate for all hours worked in a week, including those in excess of 40 in a workweek, in excess of 12 in a day, and/or in excess of 12 consecutive hours.

3.      Gen 1's straight-time-for-overtime pay plan violates the FLSA, CWCA, and CMWA because the Security Guards are owed overtime for hours worked in excess of 40 in a week at the rate of one-and-one-half times their regular rates.

4.      Gen 1's "straight-time-for-overtime" pay plan violates the CWCA and CMWA because the Security Guards are owed overtime for hours worked in excess of 12 in a day and/or in excess of 12 hours consecutively.

5. Xee Rader brings this action to recover the unpaid overtime and other damages owed to Gen 1's Security Guards.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under a federal statute. 29 U.S.C. § 216(b).

7. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because they arise from a common nucleus of operative facts.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Gen 1's US Operations are headquartered in this District.

## PARTIES

9. Rader has worked for Gen 1 as a Security Guard since January 2019.

10. Throughout his employment, Gen 1 paid Rader at the same hourly rate for all the hours he works including those in excess of 40 in a workweek ("straight-time-for-overtime").

11. Additionally, when Rader works in excess of 12 hours in a day and/or for 12 consecutive hours, Gen 1 has paid Rader at the same hourly rate for all these hours.

12. Rader's consent to be a party plaintiff is attached.

13. Rader brings a FLSA collective action on behalf of himself and all other Gen 1 Security Guards who were paid according to Gen 1's straight-time-for-overtime plan.

14. The FLSA class of employees Rader seeks to represent consists of:

**All Security Guards paid according to Gen 1's straight-time-for-overtime plan at any time during the last 3 years** (the "Security Guards").

15. Rader also brings his CWCA and CMWA claims as a Rule 23 class on behalf of himself and all other Gen 1 Security Guards who worked 12 hours in a day and/or for 12 consecutive hours for Gen 1 in Colorado and were paid at their straight-time rates for these hours.

16. Rader brings overtime claims arising under Colorado law as a Rule 23 class action on behalf of the following class:

> **All Security Guards who worked for Gen 1 in Colorado at any time during the last 3 years, who worked in excess of 12 hours in a day and/or 12 consecutive hours and who were paid straight-time rates** (the "12 Hour Guards").

17. Gen 1 is a Colorado limited liability corporation with its principal place of business in Denver, Colorado.

18. Gen 1 is a "Colorado based, full service, fully bonded and insured security company specializing in fully compliance certified physical security, transportation of goods, and monetary funds."[1]

19. Gen 1 may be served by serving its registered agent for service of process: Benjamin Garrett, 4819 King St., Denver, Colorado 80221 or at any other place where Benjamin Garrett may be found.

### FLSA Coverage

20. For at least the past three years, Gen 1 has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

21. For at least the past three years, Gen 1 has been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

---

[1] https://www.gen1protection.com/aboutus

22. For at least the past three years, Gen 1 has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

23. Gen 1 has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, etc.) that have been moved in or produced for commerce.

24. Further, Gen 1's annual gross volume of sales has exceeded $500,000 for at least the past 3 years.

25. For at least the past 3 years, Rader and the Security Guards were engaged in commerce or in the production of goods for commerce.

26. Gen 1 treated all its Security Guards (including Rader) as employees by setting their work schedules, controlling their job assignments, withholding taxes from their pay, and maintaining their personnel records.

**FACTS**

27. Gen 1 provides an array of security and protection services to its clients in the Denver, Colorado area.[2]

28. Rader and Gen 1's other Security Guards are the employees who perform the services Gen 1's provides to its clientele.

29. Gen 1's Security Guards, including Rader, typically work more than 40 hours a week.

---

[2] https://www.gen1protection.com/services

30. Gen 1 pays all its Security Guards at straight-time-for-overtime regardless of the number of hours worked that workweek.

31. Many of Gen 1's Security Guards also regularly work in excess of 12 hours in a day and/or in excess of 12 consecutive hours.

32. Gen 1 pays all its Security Guards at their straight-time rates for hours worked in excess of 12 hours in a day and/or in excess of 12 consecutively.

33. In January of 2019 Rader began working for Gen 1 in the Denver, Colorado area.

34. As a Security Guard Rader spends his time patrolling the perimeter of Gen 1's clients' facilities and checking the identification of those who enter.

35. Gen 1's records reflect the hours Rader works each workweek and pay period.

36. Gen 1 pays Rader $15.00 per hour.

37. Although he often works more 50 or more hours per workweek, Gen 1 never pays Rader any overtime but, rather, pays him for all hours at his regular hourly rate.

38. Additionally, although he regularly works in excess of 12 hours in a day and/or 12 hours consecutively, Gen 1 never pays Rader more than his straight-time rate for these hours.

39. For example, for the pay period from July 1 through July 15, 2019, Rader worked 119.90 hours and Gen 1 paid him at the same hourly rate for all these hours:



40. This is true despite the fact Rader worked more than 64 hours in the workweek ending July 7, 2019 (which is obviously more than 40 hours in a week).

41. Further, on July 3, 2019 Rader worked in excess of 14 hours total:



42. All Gen 1's Security Guards perform duties like those Rader performs including patrolling the perimeter of client facilities and checking the identification of those who enter.

43. The Security Guards work similar hours and are denied overtime as a result of the same illegal straight-time-for-overtime pay practice.

44. All Gen 1's Security Guards work in excess of 40 hours each workweek.

45. Many of the Security Guards also regularly work in excess of 12 hours in a day or in excess of 12 hours consecutively.

46. Instead of paying Security Guards overtime, Gen 1 pays them straight-time-for-overtime for all these hours.

47. As a result, Gen 1 failed to pay the Security Guards proper overtime compensation for hours worked in excess of 40 in a workweek, 12 in a day, and/or 12 hours consecutively.

**FLSA VIOLATIONS**

48. Gen 1's straight-time-for-overtime pay plan violates the FLSA because Rader and the other Security Guards did not receive overtime pay for hours worked over 40 in a week.

49. Gen 1 knew, or showed reckless disregard for whether, its straight-time-for-overtime plan violated the FLSA.

50. Gen 1's failure to pay overtime compensation to the Security Guards was not based on any reasonable interpretation of the law.

51. Nor was Gen 1's decision not to pay overtime made in good faith.

52. Accordingly, Rader and all those who are similarly situated are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorney's fees, and costs.

**CWCA AND CMWA VIOLATIONS**

53. At all relevant times, Gen 1 has been, and continues to be, an "employer" within the meaning of the CWCA and the CMWA.

54. While working for Gen 1 in Colorado, Rader and the 12 Hour Guards were "employees" within the meaning the CWCA and the CMWA.

55. While working for Gen 1 in Colorado, Rader and the 12 Hour Guards were regularly scheduled to work, and in fact did work, in excess of 40 hours in a workweek.

56. While working for Gen 1 in Colorado, Rader and the 12 Hour Guards were regularly scheduled to work, and in fact did work, in excess of 12 hours in a day and/or in excess of 12 consecutive hours.

57. Gen 1, however, did not pay Rader and the 12 Hour Guards at one-and-one-half times their "regular rates" for these hours in excess of 40 in a workweek and in excess of 12 in a day and/or in excess of 12 consecutively.

58. As a result of the foregoing conduct, as alleged, Gen 1 failed to pay wages due under the CWCA as implemented by the applicable Minimum Wage Order(s), thereby violating, and continuing to violate, the CWCA.

59. Gen 1 committed these violations knowingly, willfully and with reckless disregard of applicable law.

60. As a result, Gen 1 owes Rader and the 12 Hour Guards the difference between the amounts actually paid for overtime wages, if any, and the proper amounts.

61. Because Gen 1 willfully violated Colorado law, Gen 1 owes these wages for the last 3 years.

62. Rader and Gen 1's other 12 Hour Guards are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### COLLECTIVE ACTION ALLEGATIONS

63. Numerous employees have been denied overtime by Gen 1's straight-time-for-overtime plan.

64. From his observations and experience at Gen 1, Rader is aware that the illegal practices or policies of Gen 1 have been imposed on the Security Guards.

65. The Security Guards all regularly worked in excess of 40 hours per week and received straight-time-for-overtime.

66. These employees are similarly situated to Rader in terms of *relevant* job duties, pay provisions, and employment practices.

67. Gen 1's failure to pay overtime as required by the FLSA results from a generally applicable, systematic pay plan that is not dependent on the personal circumstances of the Security Guards.

68. Thus, Rader's experiences are typical of the experiences of the Security Guards.

69. The specific job titles or precise job locations of the various Security Guards do not prevent collective treatment.

70. All Security Guards, regardless of their precise job requirements or rates of pay, are entitled to overtime for hours worked in excess of 40 in a week.

### CLASS ACTION ALLEGATIONS

71. Gen 1 employs 12 Hour Guards in Colorado.

72. Gen 1 maintains a physical location in Colorado.

73. Gen 1 is a commercial support service company within the meaning of the CWA and the applicable Colorado Minimum Wage Orders because it is a business or enterprise that is directly or indirectly engaged in providing security and protection services, to other commercial firms through the use of service employees such as Plaintiffs and the other Security Guards.

74. During the time they worked in Colorado, which includes time during the three (3) years preceding the filing of this complaint, Rader and Gen 1's other 12 Hour Guards in Colorado were employees of Gen 1 with the meaning of the CWCA the applicable Colorado Minimum Wage Orders.

75. Although Rader does not know the precise number of 12 Hour Guards, Rader believes there are more than 40 individuals that fit into the class.

76. The 12 Hour Guards are so numerous that their individual joinder is impractical.

77. The identities of the members of the 12 Hour Guards are readily discernible from Gen 1's records.

78. Rader and the 12 Hour Guards have a commonality of interest in the subject matter and remedy sought, namely back wages plus penalties, interest, attorneys' fees and the cost of this lawsuit.

79. Common questions of law and fact exist to all members of the 12 Hour Guards.

80. These questions predominate over the questions affecting individual class members.

81. These common legal and factual questions include, but are not limited, to the following:

    a) Whether Rader and the 12 Hour Guards worked hours in excess of forty (40) hours per workweek;

    b) Whether Rader and the 12 Hour Guards worked in excess of twelve (12) hours per day or for twelve (12) consecutive hours;

    c) Whether Rader and the 12 Hour Guards were denied overtime pay at a rate not less than one-and-one-half times their regular rates as prescribed by Colorado Law;

82. These and other common questions of law and fact, which are common to the 12 Hour Guards, predominate over any individual questions affecting only individual members.

83. Rader's claims are typical of the claims of the 12 Hour Guards because Rader was denied overtime wages in accordance with Colorado law in the same manner as the 12 Hour Guards.

84. Rader is an adequate representative of the 12 Hour Guards because his interests do not conflict with the interests of the 12 Hour Guards.

85. Rader has retained competent counsel, highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.

86. The 12 Hour Guards' interests will be fairly and adequately protected by Rader and his counsel.

87. A Rule class action for the Colorado state law claims is superior to other available means of fair and efficient adjudication of the state law claims of Rader and the 12 Hour Guards.

88. The injuries suffered by each individual class member are relatively small in comparison to the burden and expense of individual prosecution of a complex and extensive litigation necessitated by Gen 1's conduct.

89. It would be virtually impossible for the 12 Hour Guards to individually redress effectively the wrongs done to them; even if the 12 Hour Guards could afford such individual litigation, the court system could not.

90. Individualized litigation presents the possibility for inconsistent or contradictory judgments.

91. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex, legal and factual issues of the case.

92. By contrast, the class action presents far fewer logistical issues and provides the benefits of a single adjudication, economy of scale and comprehensive supervision by a single court.

93. Rader is not aware of any other litigation filed against Gen 1 asserting similar claims.

94. The operative questions in this case are whether Rader and the 12 Hour Guards were compensated at one-and-one-half times their regular rates for all overtime hours under Colorado law.

95. Therefore, common evidence common will be determinative of the operative questions presented.

### JURY DEMAND

96. Rader demands a trial by jury.

### RELIEF SOUGHT

97. Wherefore, Rader prays for:

   (a) an order allowing Rader's FLSA claims to proceed as a collective action and directing notice to the other Security Guards;

   (b) an order allowing certifying a Rule 23 class for Rader's Colorado State Law Claims;

   (c) judgment finding Gen 1 in violation of the FLSA;

   (d) judgment finding Gen 1 in violation of the CWCA and the CMWA.

   (e) judgment finding Gen 1 liable for to Rader and the Security Guards for unpaid overtime, and an equal amount of liquidated damages;

   (f) judgment awarding Rader and the Security Guards reasonable attorney's fees and costs of this action;

   (g) judgment awarding Rader and the class members pre- and post-judgment interest at the highest rates allowed by law; and

   (h) such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: **/s/ Michael K. Burke**
_____
Richard J. (Rex) Burch
Texas Bar No. 24001807
Admitted to District of Colorado
Michael K. Burke
Texas Bar No. 24012359
Admitted to District of Colorado
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com
mburke@brucknerburch.com

**Andrew W. Dunlap**
State Bar No. 24078444
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

**CONSENT TO JOIN WAGE CLAIM**

Print Name: Xee Rader

1. I hereby consent to participate in a collective action lawsuit against **Gen 1 Protection LLC** (and its related entities) to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at BRUCKNER BURCH PLLC as my attorneys to prosecute my wage claims.

4. I authorize the law firm and attorneys at BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: *[DocuSigned by: 57EEA710AE28407...]*

Date Signed: 9/30/2019